**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| THE STATE OF VERMONT,<br><br>        Plaintiff,<br><br>    v.<br><br>EVERNORTH HEALTH, INC., et al.,<br><br>        Defendants. | Civil Action No. 2:24-cv-01103-MKL |

**CVS HEALTH CORPORATION'S REPLY IN SUPPORT OF ITS
<u>RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

# INTRODUCTION

CVS Health Corp.'s motion to dismiss establishes, through a sworn declaration, that it is a holding company with no employees that performs no services in Vermont. In response, the State relies on its conclusory, group-pleaded allegations and mischaracterized exhibits to support its unfounded assertion that CVS Health Corp.—as distinct from its subsidiaries—engaged in conduct related to rebates, PBM services, or anything else at issue in this litigation. The State primarily relies on its allegations that CVS Health Corp. "directed" its subsidiaries' in-forum conduct. But those conclusory allegations are directly contradicted by CVS Health Corp.'s testimonial evidence and provide no basis to impute to CVS Health Corp. the conduct of its subsidiaries. The State's remaining arguments turn entirely on its repeated error of conflating CVS Health Corp., *the legal entity* named as a defendant in this lawsuit, with "CVS Health," *the brand name* that various entities within the CVS family of companies use in marketing and public-facing materials. As a matter of law, the State bears the burden of showing that the Court has jurisdiction over CVS Health Corp., not other entities that use a similar brand name. Because the State fails to meet its burden, jurisdictional discovery is unwarranted and CVS Health Corp. is not a proper party to this action. It should be dismissed.

# ARGUMENT

**I.    THERE IS NO BASIS FOR PERSONAL JURISDICTION OVER CVS HEALTH CORP.**

The State concedes (at 15 n.7) that CVS Health Corp. is not subject to general jurisdiction in Vermont, and instead attempts to establish specific jurisdiction. But the State fails to plead any relevant facts to meet its burden of showing that CVS Health Corp. itself had any contacts with Vermont on any matter giving rise to its claims.

1

1.      Nothing in the State's opposition undermines the declaration of Thomas S. Moffatt ("Moffatt Decl."), who serves as Vice President, Corporate Secretary and Senior Legal Counsel of CVS Pharmacy, Inc. Mr. Moffat's declaration establishes that CVS Health Corp. is a holding company that performs no functions in Vermont, has no offices in Vermont, maintains no employees in Vermont (or anywhere else), and conducts no operations in Vermont. Moffatt Decl. ¶ 4–7, Dkt. 72-1.[1] As the State does not dispute, federal courts around the country have credited similar declarations from Mr. Moffatt and dismissed claims against CVS Health Corp. for lack of personal jurisdiction. *See Church Ekklasia Sozo Inc. v. CVS Health Corp.*, 2022 WL 1572732, at *3 (W.D.N.C. Feb. 25, 2022); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 980–81 (N.D. Cal. 2016); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 837 (D.S.C. 2015); *accord Ma v. CVS Pharmacy, Inc.*, 2020 WL 533702, at *3 & n.1 (N.D. Ill. Feb. 3, 2020), *aff'd*, 833 F. App'x 10 (7th Cir. 2020). The State ignores these on-point holdings.[2]

The State concedes (at 6, 11, 14) that the Court should not credit the State's allegations that are controverted by "CVS Health's Declaration." Yet the State relies extensively on unsupported allegations of the First Amended Complaint ("FAC") that are directly contradicted by Mr. Moffatt's declaration. For example, the State argues (at 12, 14, 20) that it alleged that "CVS Health 'sets the

---

[1] The State (at 11) makes much ado about the fact that Mr. Moffatt also holds the title of Vice President, Assistant Secretary, and Assistant General Counsel for CVS Health Corp. But Mr. Moffatt's title simply further demonstrates that he possesses knowledge of the relevant facts. It says nothing about CVS Health Corp.'s alleged in-forum conduct.

[2] Rather than address these cases, the State instead (at 13–14) cites an opposition brief filed by the State of Illinois, represented by the same outside counsel that represent the State here. *See* State Ex. 5, Dkt. 75-5. But as the State concedes, no court has ruled on that motion, much less accepted Illinois' arguments. The State's attachment of this exhibit also is improper, as parties may not attempt to reference other legal briefs to circumvent page limits. *See, e.g., Topliff v. Wal-Mart Stores East LP*, 2007 WL 911891, at *9 n.65 (N.D.N.Y. Mar. 22, 2007); *Nissan Motor Acceptance Corp. v. Dealmaker Nissan*, 2012 WL 2522651, at *2 n.2 (N.D.N.Y. June 27, 2012).

overarching policy and strategy to maximize profitability across the entire CVS Health family.'" State Br. at 12 (quoting FAC ¶ 42). But those allegations are directly contradicted by Mr. Moffatt's sworn statements that CVS Health Corp. performs "no operations unrelated to its status as a holding company" and that it has "no direct involvement in directing, managing, or supervising the operations or the employees of any of its direct or indirect subsidiary companies." Moffatt Decl. ¶¶ 4, 6. Thus, given the State's concession, the State's allegations should not be credited.

The State's allegations that CVS Health Corp. sets "policy" and directs unidentified conduct are insufficient for other reasons CVS Health Corp. already pointed out and that the State ignores. For one thing, courts routinely refuse to credit conclusory and generalized allegations that a corporate parent exercises direction or control over its subsidiaries. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85–86 (2d Cir. 2018); CVS Health Br. at 11 (collecting cases). And allegations that CVS Health Corp. directed other entities are not allegations of *CVS Health Corp.'s* involvement with the conduct the State challenges—they instead go to the State's misguided agency theory that fails for the reasons set out in CVS Health Corp.'s opening brief and discussed further below. *Infra* pp.8–9. As the State does not dispute, the FAC's allegations about CVS Health Corp. do not identify it as a PBM, pharmacy, or entity that provides PBM or pharmacy services—a glaring omission in light of the FAC's allegations that every other CVS Caremark Defendant and Zinc Defendant provided those or related services. CVS Health Br. at 13.

The State also claims (at 12, 16, 17) that CVS Health Corp. made a number of "public statements" that purportedly demonstrate its direction of its subsidiaries, or its direct involvement in the provision of PBM or pharmacy services. None does. For example, the State cites alleged "public statements" made in CVS Health Corp.'s annual SEC filings. *See* State Br. at 12, 16 (citing FAC ¶ 43). But as CVS Health Corp. already explained, those public filings define "CVS Health"

3

to encompass all of its "subsidiaries," which include companies that provided PBM and pharmacy services and are actively defending this case (*i.e.*, CaremarkPCS Health, L.L.C.), and in no way suggests CVS Health Corp. itself performs PBM or pharmacy services. CVS Health Br. at 12. And CVS Health Corp. already further explained that, under settled legal principles, there is "no significance in the fact that [a parent company] filed consolidated annual reports" for purposes of corporate separateness. *See, e.g.*, *Dumont v. Litton Loan Servicing, LP*, 2014 WL 815244, at *22 (S.D.N.Y. Mar. 3, 2014); CVS Health Br. at 12. The State did not respond.

The State also cites two alleged statements from CVS Health Corp. that purportedly include "public statements concerning [CVS Health Corp.'s] operations and role in PBM services." State Br. at 12, 16, 17 (citing FAC ¶¶ 44–45). But CVS Health Corp. already pointed out that those alleged statements are entirely unidentified and unattributed, and the State has not attempted to identify or attribute them in its opposition. CVS Health Br. at 14 n.8. No evidence suggests that these alleged statements (assuming they occurred at all) were made by, or in reference to, CVS Health Corp., as opposed to "CVS Health," the *brand name* that various entities within the CVS family of companies use in marketing and other public-facing materials. As the court in *Corcoran* explained, this sort of "CVS Health" branding merely reflects that "CVS Health presents itself as one integrated company on its website and its government filings for marketing purposes," not that it directs its subsidiaries' conduct. *See* 169 F. Supp. 3d at 983–84. The only evidence establishes that CVS Health Corp. is a holding company that performs no services unrelated to that function, and that it does *not* direct its subsidiaries' conduct. Moffatt Decl. ¶¶ 4, 6. To state the obvious, CVS Health Corp.'s functions as a holding company do not include providing PBM or pharmacy services. *See id.*

4

The State's reliance on allegations that CVS Health Corp. made statements to Congress and to the Vermont Legislature fail for the same reason. *See* State Br. at 12, 15, 17 (citing FAC ¶¶ 215, 222, 225(h)). The State's own allegations show these purported statements refer to the PBM services that CVS Health Corp.'s *subsidiaries* provide. For example, the State makes allegations about statements by the President of *CVS Caremark*—which is the PBM business within the CVS Health family of companies—that "*CVS Caremark* has helped [its] clients save more than $141 billion," and a statement by an unidentified executive "that *CVS Caremark* 'has taken a number of steps to address the impact of insulin price increases.'" FAC ¶¶ 222, 225(h); *see id.* ¶ 215 (unidentified statement regarding services provided by "CVS Health's pharmacy benefit manager," not CVS Health Corp. itself). But none of those statements indicates that CVS Health Corp. itself performs any of the at-issue services, nor that it directs the conduct of its subsidiaries. In addition to being irrelevant, the State's allegations regarding these statements cannot constitute the basis for the State's claim because this type of activity is protected petitioning activity under the *Noerr-Pennington* doctrine. *See Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *6 (S.D.N.Y. Aug. 21, 2007) (concluding executives' congressional testimony "constitute[d] the type of petitioning that is protected by the *Noerr-Pennington* doctrine and thus cannot form the basis of [plaintiff]'s claim of fraud"); *see also, e.g.*, *Nunag-Tanedo v. E. Baton Rouge Parish School Bd.*, 711 F.3d 1136, 1138–39 (9th Cir. 2013).

2. The State also (at 12–13) introduces as exhibits three court documents in another lawsuit filed by a PBM trade association called the Pharmaceutical Care Management Association ("PCMA"), not CVS Health Corp. At the threshold, the Court may only take judicial notice of the existence of these documents, and may not consider them "for the truth of the matters asserted in the other litigation." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.

5

2006). The Court therefore may not consider the statements within the State's exhibits for the truth of the matters asserted therein. *See Philadelphia Indem. Ins. Co. v. Life Safety Fire Prot., Inc.*, No. 2:23-CV-00641, 2024 WL 3849973, at *4 (D. Vt. Aug. 16, 2024) ("The court thus could take judicial notice of the fact that the Declaration was filed in a state court but the statements contained there are not subject to judicial notice."). In any event, none of these exhibits suggests that CVS Health Corp., as opposed to its subsidiaries, carries out any activity related to the PCMA. For example, the State cites a Corporate Disclosure Statement the PCMA filed identifying "CVS Health" as a member in the organization. *See* State Ex. 2 at 1, Dkt. 75-2. But this assertion by PCMA—a third party that is not a defendant in this case—again conflates CVS Health Corp. *the legal entity* with CVS Health, *the brand*. The State's reliance on a declaration by the PCMA's Chief Operations Officer, Brian McCarthy, similarly fails, as that declaration does not mention CVS Health Corp. at all. *See generally* State Ex. 4, Dkt. 75-4.

The State also cites an exhibit reflecting that CVS Health Corp. Executive Vice President Jon Roberts served on the PCMA's board of directors. *See* State Ex. 3, Dkt. 75-3. But as the State itself alleges, Mr. Roberts also served as "CEO of Caremark Rx, L.L.C.," a PBM, and the State's own exhibit demonstrates that Mr. Roberts participated in the PCMA in his capacity as "President" of the PBM business, "*CVS/Caremark.*" *See id.* at 1 (emphasis added); FAC ¶ 78.a.iii. As CVS Health Corp. explained in its opening brief, and as the State concedes, a parent company is not an alter ego of its subsidiaries merely because the entities share executives and directors. CVS Health Br. at 10; State Br. at 19.

The State's reliance (at 17) on a corporate website fails for the same reason. State Br. at 17 (citing FAC ¶¶ 218–219). The statements allegedly appeared on "*CVS Caremark's* website," FAC ¶ 218 (emphasis added), and similarly reflect "CVS Health" branding as opposed to identifying CVS

Health Corp. as the owner or operator of the website. *See Corcoran*, 169 F. Supp. 3d at 983–84. Even if the website were in play, "[t]he mere creation of a website containing product information viewable by persons within a forum does not establish personal jurisdiction." *Cernasky v. Lefebvre*, 88 F. Supp. 3d 299, 309 (D. Vt. 2015).[3]

3.  The State does not dispute that it is required to establish personal jurisdiction as to each defendant, and that courts routinely reject attempts to avoid pleading requirements by "lump[ing] separate defendants together" with group pleading. *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 73, 212 Vt. 612, 238 A.3d 608 (2020); CVS Health Br. at 12–13. Nor does the State dispute that the FAC largely ignores the distinction between legal entities and refers collectively to seventeen distinct entities as "CVS Caremark." FAC ¶¶ 74 n.10, 79. The State instead accuses CVS Health Corp. (at 14–15) of "completely ignor[ing] key allegations" about "extensive involvement by CVS Health itself." The State is demonstrably wrong—CVS Health Corp. specifically discussed twelve of the twenty-two allegations the State accuses it of ignoring. *See* CVS Health Br. at 4 (discussing FAC ¶¶ 40, 42, 46, 47, 57, 62, 78); *id.* at 8 (discussing FAC ¶¶ 47, 54, 57, 62); *id.* at 10 (discussing FAC ¶ 78); *id.* at 11 (discussing FAC ¶ 42); *id.* at 12 (discussing FAC ¶¶ 43, 78); *id.* at 13 (discussing FAC ¶¶ 40, 46, 210, 216); *id.* at 14 (discussing FAC ¶¶ 40, 42, 215). And, the remaining ten are simply examples of group-pleading that refer either to "CVS Caremark" or "PBM Defendants" collectively, not CVS Health Corp. individually, *see* FAC ¶¶ 4, 7, 217–19, 222, 225–28.[4]

---

[3] Although some courts have recognized that certain websites may be sufficient to establish purposeful availment, the State has not attempted to show that the alleged website referenced in the FAC is "Vermont-specific" or otherwise fits into this narrow category. *See Cernasky*, 88 F. Supp. 3d at 309.

[4] Many of these alleged statements on their face refer to other CVS Caremark Defendant entities. *See, e.g.*, FAC ¶¶ 210, 216–17, 222.

Indeed, it is the *State* that ignores issues by doubling down on its egregious group-pleading. Although the FAC does not contain a single specific allegation that CVS Health Corp. performed PBM or pharmacy services, the State relies (at 16, 18) on its group-pleaded allegations to claim that CVS Health Corp. "offered PBM services" and "provided retail and mail order pharmacy services in Vermont." But the State's reliance on allegations about "CVS Caremark" collectively runs headlong into Mr. Moffatt's sworn statements that *CVS Health Corp.* does not perform services unrelated to its holding-company status. The State itself makes different allegations as to CVS Health Corp. and its PBM and pharmacy subsidiaries—as indicated, CVS Health Corp. is the only CVS Caremark Defendant or Zinc Defendant that is not alleged to be a PBM or pharmacy, or perform those or related services. *Compare* FAC ¶¶ 40–46, *with id.* ¶¶ 48, 60, 63, 68, 71, 75. And the State cannot credibly assert that CVS Health Corp. itself performs PBM or pharmacy services, given the State's repeated claims in the FAC and in its brief that it is seeking to establish personal jurisdiction based on CVS Health Corp.'s alleged direction of other entities. State Br. at 1, 19–20.

The State also argues (at 15) that CVS Health Corp.'s arguments about the State's inability to pierce the corporate veil or establish an agency relationship are "beside the point" because the State is relying on CVS Health Corp.'s own conduct "set[ting] policy and direct[ing] the actions of other CVS Defendants." That is a non sequitur. The State's allegations about CVS Health Corp.'s purported "direction" of other defendants is relevant only if they establish a basis to impute to CVS Health Corp. the forum contacts of its subsidiaries—in other words, veil-piercing or agency.

4.      The State concedes "that a corporate parent is not subject to personal jurisdiction in a state merely because it owns a subsidiary in that State." State Br. at 19; *see Allen-Sleeper v. Fed. Express Corp.*, No. 5:09-CV-151, 2010 WL 3323660, at *4 & n.2 (D. Vt. Apr. 14, 2010) (collecting cases). And the State does not dispute that CVS Health Corp. and all of its subsidiaries observe and

8

enforce corporate formalities, and that the State therefore cannot pierce the corporate veil. *See* CVS Health Br. at 10; Moffatt Decl. ¶ 7.

The State instead tries (at 19–20) to impute the actions of subsidiaries to CVS Health Corp. via agency principles. As the State's authorities recognize, however, an agency relationship cannot establish personal jurisdiction unless the plaintiff can show "direct or indirect acts by the parent related to the allegations of the complaint that would constitute 'purposeful availment' of the forum." *Gerling-Kinzern Gen. Ins. Co.--U.K. Branch v. Noble Assur. Co.*, No. 2:06-CV-76, 2006 WL 3251491, at *9 (D. Vt. Nov. 1, 2006). The State's *only* support for its assertion for any "direct involvement in raising drug prices in Vermont" and "total control of the other CVS Defendants' conduct" is its allegation that CVS Health Corp. "sets the overarching policy and strategy" of its subsidiaries. State Br. at 12, 14, 20 (citing FAC ¶ 42). As explained above, those allegations cannot establish jurisdiction because they are conclusory and are controverted by the sworn statements CVS Health Corp. adduced. *See supra* pp.2–4; *see, e.g.*, *Charles Schwab*, 883 F.3d at 85–86.

## II. THE STATE IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY.

Perhaps recognizing problems with its position, the State requests (at 23) the Court to order jurisdictional discovery into "CVS Health's role in raising drug prices." But the State has failed to satisfy its "burden of showing necessity" for such discovery. *Karim-Rashid v. NYS Dep't of Corr. & Cmty. Supervision*, 2018 WL 524784, at *4 (W.D.N.Y. Jan. 24, 2018). "Courts do not permit jurisdictional discovery for the purpose of a 'fishing expedition.'" *Oeschger v. GeneThera, Inc.*, 395 F. Supp. 3d 345, 354 (D. Vt. 2019) (motion to reconsider). The plaintiff must at minimum have "made a sufficient start toward establishing jurisdiction." *Berkley Ins. Co. v. Reed*, 2021 WL 12326820, at *5 (W.D.N.Y. Sept. 13, 2021). The State was required to "assert[] specific, non-conclusory facts that, if further developed, could demonstrate substantial state contacts." *Viko v.*

9

*World Vision, Inc.*, No. 2:08-CV-221, 2009 WL 2230919, at *16 (D. Vt. July 24, 2009); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007).

The State failed to show a "sufficient start" toward establishing jurisdiction. The State's only basis for asserting jurisdictional discovery is its claim (at 24) that CVS Health Corp. "share[s] similar officers and executives" with other CVS Caremark entities, and that "allowing discovery into that limited issue . . . would help the State further clarify CVS Health's role in this case." But the State has not shown that discovery on this issue could help it establish jurisdictionally relevant facts. As the State concedes, even where CVS Health Corp. and certain of its subsidiaries share certain officers and directors, "[a] parent corporation is not liable for the acts of its subsidiary merely because it . . . shares common shareholders, directors or officers with the subsidiary." *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *6 (Del. Ch. Nov. 13, 2018). Mr. Moffatt's declaration makes clear that all of the separate and distinct CVS Caremark Defendant entities and Zinc Defendant entities observe and enforce corporate formalities. Moffatt Decl. ¶ 7. Indeed, the State implicitly concedes that it cannot make this showing because the State does not assert that there is any basis to disregard the corporate form. The Court therefore should reject the State's request to engage in a fishing expedition based entirely on its conclusory assertions. *See, e.g.*, *Wego Chem. & Min. Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 386 (E.D.N.Y. 2013) (plaintiff is "not entitled to discovery to establish essentially speculative allegations").

## **CONCLUSION**

For the foregoing reasons, and those set out in CVS Health Corp.'s opening brief, CVS Health Corp. respectfully requests that the Court dismiss the FAC against it for lack of personal jurisdiction.

Dated: March 6, 2025                                              Respectfully submitted,

| | |
|---|---|
| WILLIAMS & CONNOLLY LLP | DINSE P.C. |
| | */s/ Kendall Hoechst* |
| Enu Mainigi* | Kendall Hoechst, Esq. |
| Craig D. Singer* | Anne Rosenblum, Esq. |
| R. Kennon Poteat III* | Dinse P.C. |
| Adam J. Podoll* | 209 Battery Street, PO Box 988 |
| Daniel Dockery* | Burlington, VT 05402 |
| 680 Maine Avenue SW | khoechst@dinse.com |
| Washington, DC 20024 | arosenblum@dinse.com |
| Telephone: (202) 434-5000 | |
| emainigi@wc.com | |
| csinger@wc.com | |
| kpoteat@wc.com | |
| apodoll@wc.com | |
| ddockery@wc.com | |
| (**admitted pro hac vice*) | |

*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; Zinc Health Ventures, L.L.C.; Zinc Health Services, L.L.C.; Caremark Arizona Specialty Pharmacy, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; Caremark Florida Specialty Pharmacy, L.L.C.; Caremark Illinois Specialty Pharmacy, L.L.C.; Caremark Kansas Specialty Pharmacy L.L.C.; Caremark Massachusetts Specialty Pharmacy, L.L.C.; Caremark Michigan Specialty Pharmacy, L.L.C.; Caremark New Jersey Specialty Pharmacy, L.L.C.; Caremark North Carolina Specialty Pharmacy, L.L.C.; and Caremark Tennessee Specialty Pharmacy, L.L.C.*